**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TERESA ANN CHARLES,                                   Case No. 1:20-cv-152

        Plaintiff,                                        McFarland, J.
                                                      Bowman, M.J.
     v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Teresa Ann Charles filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED, because it is not supported by substantial evidence in the record as a whole.

### I. Summary of Administrative Record

In February 2016, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), and a protective application for Supplement Security Income ("SSI"), alleging she became disabled on September 4, 2015, based upon a combination of physical and mental impairments including anxiety, depression, heart attacks, arthritis in her knees and back, and nerve damage in her neck. After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an ALJ.

1

On July 17, 2018, Plaintiff appeared with counsel and gave testimony before ALJ William Diggs; a vocational expert also testified. (Tr. 52-101). Plaintiff was 43 years old at the time of her alleged disability onset, and remained a younger individual at the time of the hearing. Plaintiff has a high school education. Until May 2015, she worked in skilled sedentary positions including as a mortgage clerk and a receptionist.

On October 22, 2018 the ALJ issued an adverse written decision, concluding that even though Plaintiff is unable to perform her past relevant work, she is not disabled. (Tr. 27-51). The ALJ determined that Plaintiff has severe impairments of ischemic heart disease – status post myocardial infarction, osteoarthritis, degenerative disc disease, dysfunction major joint, obesity, affective disorder, and anxiety disorder. (Tr. 32). The ALJ also determined that Plaintiff has non-severe impairments including heel spurs, hammertoes and Achilles tendonitis. (*Id.*) In this judicial appeal, Plaintiff does not dispute the ALJ's determination that none of her impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 33).

The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform a restricted range of sedentary work, subject to the following limitations:

> [T]he claimant can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently balance, occasionally stoop, kneel, crouch, and crawl. She can perform frequent gross and fine manipulation and frequent feeling with the bilateral upper extremities. She must avoid all exposure to work hazards, such as dangerous machinery and unprotected heights. She is limited to simple, routine tasks with no fast pace [or] strict production demands. She can have occasional contact with supervisors, coworkers, and the public. She can tolerate routine changes in work setting.

(Tr. 35). Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform a "significant

2

number" of jobs in the national economy, including the representative jobs of office clerk, inspector/tester/sorter, and production work helper, all of which could be performed with a cane.[1] (Tr. 42-43). Therefore, the ALJ determined that Plaintiff was not under a disability. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff argues that the ALJ erred: (1) by failing to include certain mental RFC limitations offered by consulting psychologists; (2) by failing to give controlling weight to the opinions of her treating psychiatrist; (3) by improperly discounting her subjective complaints; and (4) by failing to include all relevant limitations in the hypothetical posed to the vocational expert. The first claim warrants remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[1]The cane limitation was not included in the RFC.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation

omitted).  In conducting this review, the court should consider the record as a whole.

*Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35

F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion....
> The substantial evidence standard presupposes that there is a 'zone of
> choice' within which the Secretary may proceed without interference from
> the courts.  If the Secretary's decision is supported by substantial evidence,
> a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or for disability

benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to

the agency to determine whether a significant number of other jobs which the claimant

can perform exist in the national economy.  *See Combs v. Com'r of Soc. Sec.*, 459 F.3d

640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must

4

present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

### B.  Plaintiff's Claims

### 1. Consulting Psychologists' Mental RFC Limitations

Plaintiff first argues that the ALJ erred by failing to incorporate opinions expressed by agency consultants.  (*See* Tr. 125, 174).  Specifically, Plaintiff argues that the ALJ should have: (1) limited her to "superficial" contact with others; (2) accepted the consultants' opinion that her subjectively reported mental limitations were "fully consistent" with anxiety and depression; and (3) assessed greater limitations in her ability to sustain concentration and pace.

The ALJ afforded only "some weight" to the opinions offered by the agency non-examining and examining psychological consultants.  However, the ALJ did explicitly incorporate the opinions of the non-examining consultants that Plaintiff be restricted to simple tasks that are not fast paced and without strict time or production demands.  He also accepted their opinions that she is able to "interact with others superficially on an occasional basis and is able to cope with the stress and change of a routine and predictable work environment."  (Tr. 40, citing Tr. 125).  In formulating Plaintiff's mental RFC, however, the ALJ left off "superficial" and shortened the limitation to "occasional contact."  (*See* Tr. 35, expressing mental RFC limitation as "occasional contact with supervisors, coworkers, and the public.").

It appears that the ALJ's decision to leave off the limitation of "superficial" contact in formulating Plaintiff's RFC was unintentional.  It is true that an ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity

5

finding." *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157, 2009 WL 2514058, at *7

(6th Cir. 2009). However, considering the ALJ's quotation of the full limitation, (Tr. 40),

one would have expected the inclusion of both "superficial" and "occasional" in describing

Plaintiff's mental RFC. As other courts within the Sixth Circuit have noted, the two terms

are not synonymous.

> [T]he terms "occasional" and "superficial" are not interchangeable. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (" 'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (citations omitted). Thus, courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions - including a limitation to "superficial" interaction. *See, e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (" 'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)).

*Hutton v. Commissioner of Social Security*, 2020 WL 3866855, at *4 (S.D. Ohio July 9,

2020), R&R adopted at 2020 WL 4334920 (S.D. Ohio July 28, 2020) (internal quotation

and additional citations omitted). In *Hutton*, the court reversed and remanded based on

similar facts, where the ALJ had afforded "some weight" to consulting opinions but failed

to incorporate the "superficial" nature of the contact limitation.

Citing *Francis v. Com'r*, 2018 W: 4442596 (S.D. Ohio Sept 18, 2018), an R&R

authored by the same magistrate judge prior to *Hutton*, the Commissioner argues that the

omission of "superficial" in this case was harmless. *See id.* at *6 (holding that the failure

to limit Plaintiff to superficial interactions with supervisors was harmless). However, in

*Francis*, the ALJ had at least limited Plaintiff to "superficial" interactions with supervisors,

and had left off the descriptor only with respect to co-workers. Here, by contrast, the ALJ

did not include the "superficial" descriptor at all.  While there may be cases in which a complete failure to include a "superficial" limitation will be harmless, the ALJ here found Plaintiff to be able to perform only a limited range of "sedentary" jobs, making even a small change to the RFC potentially significant.

For the same reasons, the undersigned rejects the Commissioner's argument that the error is harmless because it is "unlikely," based on the descriptions of the representative jobs in the DOT, that those jobs would require more than superficial interaction.

> The Commissioner's reliance upon the descriptions set forth in the DOT to conclude that any error is harmless is unavailing. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). As set forth above, remand is required so that the ALJ may properly consider and discuss the opinions of [the consultants] and determine what, if any, alterations may need to be made in the RFC, which, in turn, could alter the testimony the VE offered and upon which the ALJ relied to conclude that Plaintiff was not disabled.

*Hutton*, at *5.

On the other hand, the undersigned finds no error in the ALJ's failure to "adopt" the finding of state agency physicians and psychologists that Plaintiff's subjective complaints were "fully consistent."  (Tr. 122, 171).  Aside from the fact that the ALJ gave the agency consulting opinions only "some weight," the assessment of credibility is not a medical opinion requiring express consideration, but instead is reserved to the Commissioner.  *See Allen v. Com'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009).

The undersigned also finds no reversible error in the failure to adopt greater mental RFC limitations based upon the opinion of the examining consultant, Dr. Chiappone.  (*See* Tr. 1205-1208). Plaintiff complains that "[a]ll the limitations on attention, persistence,

pace, and stress would keep [Plaintiff] from sustaining any work for 40 hours a week." (Doc. 8 at 7). However, Dr. Chiappone did not opine that Plaintiff's limitations were so severe that she could not sustain fulltime work. Instead, he opined that Plaintiff "*may have some difficulty* remembering information" and "*would have some difficulty* maintaining concentration and attention" based upon deficits in her mental status exam. (Tr. 1206-07, emphasis added). With respect to persistence and pace in particular, he stated that her "depression and anxiety would make it difficult for her to maintain persistence and pace." (Tr. 1207). He also opined that it would be "difficult for her to deal with give and take on a job," and that she "may have some difficulty dealing with stress on a job." (Tr. 1207-08).

At Step 3, the ALJ found "moderate" limitations in the broad functional area of "concentrating, persisting, or maintaining pace" based upon the consultative reports and Plaintiff's own reports that she could follow instructions but that her pace was slow. (Tr. 34). Dr. Chiappone's opinions are consistent with such moderate limitations. For example, Dr. Chiappone reported "she was able to understand, remember, and follow instructions" throughout the clinical interview, her "memory was adequate" in reporting her history, and "she can understand, remember, and follow instructions when she does chores although she said sometimes she's not motivated to attend to tasks such as cleaning the floors." (Tr. 1207). Dr. Chiappone noted that "she can remember what she reads," that "she could follow job instructions" and "drives [on] a regular basis." (*Id.*) He concluded that she retains "the cognitive ability to understand, remember, and follow basic instructions." (*Id.*) He also concluded "she can focus on basic chores." (*Id.*)

As the ALJ pointed out, Dr. Chiappone's opinions concerning Plaintiff's anticipated level of "difficulty" (as opposed to total inability) were "somewhat vague and not

8

[expressed] entirely in vocational terms." (Tr. 40-41). Although remand offers the opportunity to reconsider the entire record including all opinion evidence, the ALJ's analysis of Dr. Chiappone's opinions does not provide independent grounds for remand.

### 2. The Weight Given to Treating Psychiatrist Dr. Ryan Schmidtz

Plaintiff's second claim asserts that the ALJ erred in failing to give controlling weight to the opinions of her treating psychiatrist, Dr. Schmidtz. (Tr. 1415-1420). Dr. Schmidtz completed a mental RFC form on November 18, 2016.[2] Using the definition provided on counsel's form, Dr. Schmitz circled "marked" to characterize the degree of limitation in <u>all</u> broad functional areas that correspond with "paragraph B" of the Listing criteria for mental health impairments. (Tr. 1416). Dr. Schmidtz additionally stated that Plaintiff had experienced "3 or more" "repeated" episodes of "deterioration or decompensation."[3] (Tr. 1417).

Two or more "marked" limitations under "paragraph B" criteria equals Listing level severity at Step 3. However, the ALJ gave Dr. Schmidt's opinions "little weight" and found the Plaintiff did not meet a mental health Listing. Instead, the ALJ found only "mild" limitations in adapting or managing oneself and in understanding, remembering, or applying information, and only "moderate" limitations in interacting with others and in concentrating, persisting or maintaining pace. (Tr. 34). Although Plaintiff does not

---

[2]Plaintiff's counsel asserts that Dr. Schmidtz began treating her in February 2016. However, the record reflects that Plaintiff began treating with a therapist in February 2016, but was not referred to Dr. Schmidtz. a psychiatry resident, until June 2016. (Tr. 1402). Plaintiff was seen by Dr. Schmidtz four more times for medication management appointments while continuing to treat with her therapist on a weekly basis. (*See, e.g.*, Tr. 1397 (7/5/16), Tr. 1392 (8/9/16), Tr. 1383 (9/20/16), and Tr. 1378 (11/15/16).
[3]In this respect, the form differs significantly from the paragraph B criteria, which requires "repeated episodes of decompensation, each of extended duration." *See* 20 C.F.R. § 404, Subpt. P, App. 1. Plaintiff does not point to any psychiatric records that suggest she suffered from any "episodes of decompensation, as defined under social security regulations.

specifically contend that she met any Listing, she argues that the ALJ erred in giving "little weight" instead of "controlling weight" to opinions offered by Dr. Schmidtz.

A long-standing regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(c)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.; see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir.2004). For claims filed before March 27, 2017, the treating physician rule[4] requires "the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security,* 581 F.3d 399, 406 (6th Cir.2009). The reasoning behind the rule has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security,* 378 F.3d 541, 544 (6th Cir.2004) (quoting former 20 C.F.R. § 404.1527(d)(2)).

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96–

---

[4]Effective March 27, 2017, many regulations have been significantly revised or rescinded. However, the elimination of the treating physician rule applies only to "claims filed on or after March 27, 2017." *See* Social Sec. Admin., *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. at 5845.

2p, 1996 WL 374188, at *2 (July 2, 1996). When an ALJ does not give controlling weight to the medical opinion of a treating physician, the Commissioner is required to provide "good reasons" for that decision. *Id.* The ALJ must explain the amount of weight given to the opinion after considering the following relevant factors: the length, nature, and extent of treatment relationship, evidence in support of the opinion; consistency with the record as a whole; and the physician's specialization. 20 C.F.R. § 416.927(c). However, an ALJ is not required to provide "an exhaustive factor-by-factor analysis" of each factor. *Francis v. Com'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).

Here, although the issue is close, the ALJ's analysis technically satisfies the "good reasons" standard. The ALJ pointed out (accurately) that the definition of "marked" limitation on the form completed by Dr. Schmidtz did not "exactly correspond with the Social Security's definition." (Tr. 41). However, the ALJ explained that the reason he was not giving controlling weight to the opinions was that they were "extreme and inconsistent with other evidence." (*Id.*)

The undersigned finds unpersuasive Plaintiff's argument that Dr. Schmidtz's opinions were in fact consistent with the opinions of the state agency psychological consultants. As noted above, the state agency consultants found only mild to moderate limitations, with no marked limitations at all. (Compare Tr. 1418-1419, Dr. Schmidtz's opinions finding "marked" limitations in 5 of 6 areas of "sustained concentration and persistence" with Tr. 125, consulting opinion finding "not significantly limited" to "moderately limited" in same abilities); *see also* Tr. 1419 (finding "marked" impairments in her ability to remember locations and workday procedures and instructions, and in her ability to "tolerate customary work pressures.") as compared to Tr. 125 (finding Plaintiff "not significantly limited" in same abilities).

In support of his rejection of Dr. Schmidtz's opinions, the ALJ cited to eight clinical records in which Plaintiff "largely presented with a normal mood and affect." (*Id.*) He also cited to her hearing testimony concerning her interactions with a friend, including going to a movie, which he found were "inconsistent with a marked social interaction limitation." He noted the "wide range of [daily] activities, and cited to various findings at her consultative psychological exam. (*Id.*). Elsewhere in the opinion, the ALJ highlighted Plaintiff's reports that she took her son to school, was able to complete self care and make simple meals, was able to complete some household chores and laundry, was able to shop, manage money, read, watch TV, drive, and socialized over dinner and movies with her friend. (*See* Tr. 34, 41).

Considering the record *as a whole*, the ALJ's determination that Plaintiff suffered from no "marked" mental limitations "in any area" is substantially supported. (Tr. 41). Still, the undersigned acknowledges some concern with the ALJ's suggestion that the psychiatrist's opinions should be rejected because they are "extreme"; otherwise, a mental health provider's opinions could be summarily rejected whenever "marked" limitations are included. In addition, a treating physician's opinion may not be rejected simply because it is inconsistent with "other evidence" – nearly all opinions disagree with <u>some</u> "other" evidence. But a treating provider's opinion may be rejected only if inconsistent with "*substantial* evidence." Moreover, that inconsistent "substantial evidence" must be comprised of something more than the medical opinions of consulting sources. Rejecting a treating physician's opinion for its disagreement with nontreating opinion evidence turns the presumption "on its head" and would constitute reversible error. *Gayheart v. Com'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). Last, the undersigned notes some concern with the ALJ's focus on a handful of clinical records in

12

which Plaintiff "largely presented with a normal mood and affect," in contrast to other records showing more severe mental symptoms. While citation to inconsistencies in the clinical records is often appropriate, an ALJ must take care not to "play doctor" in assessing mental health treatment records. On remand, the ALJ can and should reconsider all of the opinion evidence under the appropriate standards.

### 3. The ALJ's Analysis of Plaintiff's Subjective Complaints

Plaintiff's third claim asserts that the ALJ erred by discounting her mental and physical subjective complaints, in part by overly relying upon objective findings. (See Tr. 36-39). Regulations provide for the consideration of objective medical evidence as "a useful indicator to assist [the agency] in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." 20 C.F.R. § 404.1529(c )(2). However, the same regulation explains that the agency "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work **solely** because the available objective medical evidence does not substantiate your statements." *Id.* (emphasis added). Instead, the ALJ considers a variety of "other evidence" when evaluating subjective symptoms. 20 C.F.R. § 404.1529(c)(3) and (c)(4).

At the hearing, Plaintiff testified to work-preclusive symptoms such as an inability to sit or stand for more than 15 minutes due to pain, (Tr. 88-89), a need to lie down for 3-4 hours per day, (Tr. 74), a need for wrist sprints and inability to use her hands for more than 20 minutes (Tr. 76). Plaintiff also asserted that she needs to elevate her legs daily due to swelling. The ALJ determined Plaintiff's testimony "concerning the intensity,

persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 36).

On the surface, the ALJ did not discredit Plaintiff's subjective complaints "solely" because of objective medical evidence; he also cited a wide variety of appropriate "other" evidence such as Plaintiff's daily activities, her social interactions, the effectiveness of treatment. *See* 20 C.F.R. § 404.1529(c)(3)(v).  For example, the ALJ pointed out that the record "indicates she has largely recovered from her September 2015 myocardial infarction," and concluded that her "cardiac impairments are largely controlled," with "[a]ny remaining limitations …sufficiently accounted for by limiting the claimant to sedentary work." (Tr. 36-37).  The ALJ also specifically considered the limiting effects of her obesity and musculoskeletal impairments before concluding that those impairments were "not severe enough to be *entirely* work preclusive."  (Tr. 37, emphasis added).  In addition to imaging studies, the ALJ summarized multiple clinical examination records that showed "varying" results ranging from normal range of motion and other normal findings to exams showing limited range of motion and pain.  (*See* Tr. 38-39).  The ALJ reasoned that because Plaintiff had "a normal musculoskeletal range of motion on various occasions" and reported "doing well" on those same dates, her alleged limitations were sufficiently accounted for by limiting the claimant to sedentary work with postural, manipulative, and environmental limitations."  (Tr. 38).   The ALJ's physical limitation to sedentary work, based on objective imaging studies, was more restrictive than the opinions of the state agency physicians. (*See* Tr. 40, disagreeing with light work restriction).

Citing to dates on which Plaintiff appeared to exhibit "largely normal affect," the ALJ also discounted Plaintiff's testimony concerning the severity of her mental impairments.  "[W]hile the claimant has some limitations from her mental impairments,

the medical evidence demonstrates her limitations are not as severe or persistent as alleged." (Tr. 39).  The ALJ determined that Plaintiff's mild to moderate mental limitations were fully accommodated by limiting Plaintiff to "simple, routine tasks with no fact pace [or] strict production demands," and only "routine changes in work setting."  (*Id.*)

Aside from the previously noted reversible error regarding the omission of "superficial" contact in the RFC, the ALJ's evaluation of Plaintiff's subjective complaints might not – standing alone - provide grounds for remand. In her reply memorandum, Plaintiff argues that a "preponderance" of evidence supports her complaints. However, "[s]ubstantial evidence is  defined  as  'more  than  a  scintilla  of  evidence but less than a preponderance.'" *Rogers v. Com'r of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal citation omitted). As the Commissioner acknowledges, this is a case in which "substantial evidence" may well exist both to support crediting Plaintiff's subjective reports and discrediting them.  In such cases, the decision ordinarily will be affirmed.  (*See* Doc. 12 at 19, arguing "the decision cannot be subject to reversal merely because there may be substantial evidence in the record that supports a different conclusion.").

Judicial deference is particularly important in evaluating subjective complaints. The assessment of such symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added). SSR 16-3p emphasizes that "our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See id.* at

15

*11. Under SSR 16-3p, an ALJ is to consider all of the evidence in the record in order to evaluate the limiting effects of a plaintiff's symptoms. *Id.*, 2017 WL 5180304, at *7-8 (listing factors); *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. However, SSR 16-3p was not intended to substantially change existing law. *See Banks v. Com'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449 at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). It remains the province of the ALJ and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See generally Rogers v. Com'r*, 486 F.3d at 247. Thus, "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Notwithstanding the starkly uphill battle in seeking remand based upon alleged errors in the evaluation of Plaintiff's subjective complaints, the record contains a not-insignificant amount of evidence to support Plaintiff's subjective reports, including but not limited to her treatment history. While there may also be substantial evidence to support the ALJ's negative assessment, the ALJ should carefully apply SSR 16-3p in his or her re-evaluation of Plaintiff's subjective complaints on remand.

### 4. The Vocational Expert's Testimony

A vocational expert's testimony will provide substantial evidence to affirm a nondisability finding so long as all relevant limitations are included in the description of

16

the RFC conveyed in the hypothetical question posed to the VE. *Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.2002). Conversely, a failure to include all relevant mental limitations will render vocational expert testimony insufficient to uphold a nondisability finding. The ALJ's failure to include a limitation to both "superficial" and "occasional" contact constitutes reversible error in this otherwise relatively close case.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.* at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT:** the decision of the Commissioner to deny Plaintiff DIB benefits is **REVERSED** and this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g) consistent with this R&R. As no further matters remain pending for the Court's review, this case is **CLOSED**.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

17

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TERESA ANN CHARLES,                                                     Case No. 1:20-cv-152

        Plaintiff,                                                    McFarland, J.
                                                                        Bowman, M.J.
        v.


COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).